DUCKER, JUDGE:
Ronald L. Cook, of Oceana, Wyoming County, West Virginia, claims damages in the amount of $4375.00 against the West Virginia Department of Finance and Administration on account of the latter’s failure to pay rent for eighteen sites or spaces in the claimant’s mobile homes park at Oceana.
On March 9, 1972, Hoy G. Shingleton, Jr. and Thomas L. Craig, Jr. contacted claimant by phone and arranged a meeting with claimant in Man, West Virginia, for the purpose of securing mobile home spaces in Oceana for victims of the Buffalo flood disaster, which had just previously thereto occurred. The meeting of the claimant with said Shingleton and Craig took place as arranged and the latter, acting as agents of the respondent, inquired of claimant as to the latter’s park and if claimant would lease the park to the State, whereupon they were told by claimant that he had ten spaces already available and shortly thereafter would have eighteen more available, and that he would lease them all to the State for a year at $25 per month per space. The claimant was .then given a letter which read as follows:
3/10/72
Mr. Ronald Cook:
I agree to lease in the name of the State of West Virginia, twenty-eight mobile home sites in Pine Acres Park, in Oceana, W.Va., upon completion of all necessary installations of utilities and other services.
I agree to lease 10 spaces which are presently available, and the other 18 spaces upon completion, which should be within 30 days.
*29 All spaces shall be leased at $25 per space.
Hoy Shingleton
Thomas L. Craig, Jr.
The respondent immediately took possession of the ten spaces and claimant proceeded to complete grading and arranging for utilities on the remaining eighteen spaces. A formal contract for the first ten spaces at $250 per month dated March 10, 1972 was signed by both Lessors, Ronald L. Cook and Betty A. Cook, and the State of West Virginia as Lessee, and approved by the Attorney General on March 21,1972, but no reference was made therein as to the additional eighteen spaces. At the expiration of the one year period the agreement was renewed for a second year as to the ten spaces and the rental paid, and the claim here does not involve the first ten spaces.
Claimant contends that he made it clear to respondent’s agents, Shingleton and Craig, that in order to complete the work on the eighteen spaces he would need funds to finance the work and in order to obtain money he would have to have written assurance about the deal; Shingleton and Craig then gave claimant the letter herein before shown.
Claimant testified that he immediately borrowed from the Castle Rock Bank in Pineville $6,000 to complete the work, and that within a three week period he had the additional eighteen spaces ready, and he then advised the agents of such fact, but two days later he was told that due to cancellations of people who had applied for sites the respondent was not going to need the spaces. The respondent did not confirm by formal agreement the leasing of the eighteen additional spaces or give claimant any formal revocation of the purported agreement.
The evidence of the respondent consisted only of the testimony of one witness, Joseph Edwin Neil, a program design specialist for the Office of Federal State Relations, an employee of the State, and who was assisting in getting relief for victims of the Buffalo flood disaster. He testified that he visited.the park on April 1, 1972, and had to walk through mud and water aroúnd the homes, two-to six inches deep in some places, that some of the tenants had complained about the water and that a drainage ditch did not drain the water off. He said the same situation prevailed at the time of a second visit at the end of April and a third visit in the middle of May. He said that Cook indicated he would do something about the *30 condition but nothing was done. The Court does not consider this evidence sufficient to eliminate a contractual liability, if there was one, and such question of liability is the real issue involved in this case, even though such evidence may have some feeble semblance of supporting the right of the respondent to refuse to proceed further with a formal consummation of the agreement as to the additional eighteen spaces.
The real question for decision then is that of the validity of the agreement alleged by claimant to have been made by claimant with the respondent. If there was no valid agreement, then attempts to revoke it were not necessary. If there was a valid contract, evidence to the effect that the respondent no longer needed the eighteen spaces and gave notice to the claimant of such fact does not, in our opinion, create for respondent a legal basis for cancellation of the purported agreement.
The agreement of the two agents of the respondent with the claimant is not in the form required by law, and it may be difficult to understand why claimant, when he signed the formal agreement as to the first ten spaces, did not then or shortly thereafter demand a similar formal contract as to the remaining eighteen spaces. However, it should be remembered that claimant is not a lawyer and could not be expected to be aware fully of the legal requirements necessary to make a perfectly formal contract with the State. Here we have two of respondent’s agents, one of them, Shingleton, admittedly being the leasing agent of the respondent, giving claimant a written memorandum covering all twenty-eight spaces when told by claimant that the latter needed some proof of agreement in order to enable claimant to borrow money for the completion of all of the spaces. So when claimant’s work under the agreement was completed, claimant had eighteen spaces left which he could not rent and so suffered the loss of rent on all the spaces he could not otherwise lease. The claimant made the spaces available to respondent and the latter was thus unjustly enriched at claimant’s expense.
The Court cannot absolve the State of liability from a contract which its agents made without compliance with the letter of the law where a private citizen has been injured by the agents’ actions in behalf of the State, especially when there has been no question, except technically, as to the agents’ authority.
Accordingly we are of the opinion to, and do hereby award the claimant the sum of $4,375.00.
Award of $4,375.00.